IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT S. FARRELL,               :

   Plaintiff,                  :

v.                               :
                                        Civil Action No. GLR-16-2262

DR. DAVID A. COX, et al.,        :

   Defendants.                 :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants David A. Cox, Benjamin Brauer, and Sheree Witt's Early Motion for Summary Judgment (ECF No. 40). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

### I.    BACKGROUND[1]

Plaintiff Robert S. Farrell worked as a teacher for the Allegany County Public Schools ("ACPS") from 2003 to 2007, and then as the Coordinator of Safety and Security until his termination in 2015. (Compl. ¶¶ 16, 36, ECF No. 2; Robert S. Farrell Dep. ["Farrell Dep."] 16:7–17:20, 36:8–20, 93:11–94:15, 97:12–19, Mar. 13, 2018, ECF No. 40-6). Farrell's late wife, Lorelee M. Farrell, (collectively with Mr. Farrell, the

---

[1] Unless otherwise noted, the facts outlined here are set forth in Plaintiff Robert S. Farrell's Complaint (ECF No. 2). To the extent the Court discusses facts that Mr. Farrell does not allege in his Complaint, they are uncontroverted, and the Court views them in the light most favorable to Mr. Farrell. The Court will address additional facts when discussing applicable law.

"Farrells") worked for ACPS, as a Health and Family Life Assistant Supervisor. (Compl. ¶ 15; Farrell Dep. 94:21–22).

In 2014, Ms. Farrell ran for a seat on the Board of Education of Allegany County (the "Board"). (Compl. ¶ 20; Farrell Dep. 46:8–22). During the campaign, Ms. Farrell said she would change the Board's Communication Policy (the "Policy"), which required all communication between ACPS employees and the Board to go through the Superintendent, Cox. (Compl. ¶¶ 22, 24–26; Farrell Dep. 46:23–49:2). Mr. Farrell generally supported Ms. Farrell's candidacy and "exercised his right of free speech" regarding matters of public concern relating to the operation of ACPS. (Compl. ¶ 21; Robert Farrell Decl. ["Farrell Decl."] ¶ 13, ECF No. 46-2). Mr. Farrell's support of his wife included supporting her proposed change to the Policy. (See Compl. ¶ 29; Farrell Dep. 50:7–55:23). Ms. Farrell was not elected to the Board in 2014. (Compl. ¶ 33).

In July 2014, Brauer, ACPS Supervisor of Student Services and Mr. Farrell's supervisor, conducted a performance evaluation of Mr. Farrell for the first time, concluding that he needed improvement in four categories. (Compl. ¶¶ 10, 30; Farrell Dep. 56:2–57:7; Brauer Decl. ¶ 7, ECF No. 40-4). On January 16, 2015, Witt, ACPS Executive Director of Special Education, and Brauer convened a "due process" meeting with Mr. Farrell, during which they discussed Brauer's concerns, but not the Policy. (Compl. ¶ 32; Farrell Dep. 68:4–76:21).[2]

---

[2] On January 16, 2015, Ms. Farrell received from her supervisor, Witt, a performance evaluation that concluded that she needed improvement in three categories. (Compl. ¶¶ 31, 33). In May 2015, the Board granted Ms. Farrell "family medical leave for treatment of cancer." (Compl. ¶ 37). When Ms. Farrell returned from leave in

2

The meeting or "hearing" was continued on February 2, 2015, with Mr. Farrell's counsel in attendance, and included further discussion of Farrell's job performance. (Compl. ¶¶ 33–34; Farrell Dep. 76:22–81:2). Before that second meeting, Witt told Mr. Farrell that he "doesn't live in a vacuum" at the Board, which he interpreted as a threat to his employment. (Compl. ¶¶ 33–34). During the meeting, Witt told Mr. Farrell that "I think you've been around here long enough, you know how things work," which Mr. Farrell understood to mean the Board was directing the review of his job performance. (Farrell Dep. 81:3–82:8). Mr. Farrell did not receive information regarding any charges against him at any point, and Mr. Farrell's counsel objected to the meeting process. (Compl. ¶¶ 34–35; Farrell Dep. 77:13–15, 84:1–3). The Board terminated Mr. Farrell's employment, effective June 30, 2015, because ACPS had eliminated the Coordinator of Safety and Security position as part of budget cost-cutting. (Compl. ¶ 36; Farrell Dep. 93:11–94:15, 97:12–19).

On May 17, 2016, the Farrells sued Defendants and the Board in the Circuit Court for Allegany County, Maryland, alleging three counts: (1) violation of Ms. Farrell's First Amendment rights; (2) violation of Mr. Farrell's First Amendment rights; and (3) violation of Mr. Farrell's due process rights under the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights.[3]

---

December 2015, the Board significantly changed her job responsibilities, placing her in a position equivalent to a teacher's classroom assistant. (Compl. ¶ 38; Farrell Dep. 94:21–23). Ms. Farrell retired in January 2016. (Compl. ¶ 39). She was elected to the Board later that year and died on November 8, 2017. (Farrell Decl. ¶¶ 4–5).

[3] Mr. Farrell does not state under which Amendment to the U.S. Constitution he brings his due process claim, but the Court will assume it is under the Fourteenth

(Compl. ¶¶ 40–60). On June 21, 2016, Defendants removed the action to this Court. (ECF No. 1). On March 21, 2017, the Court issued a Memorandum Opinion and Order, dismissing certain claims and dismissing the Board as a Defendant. (ECF Nos. 13, 14). Ms. Farrell died in November 2017, (see ECF No. 35), and on March 14, 2018, the parties filed a Stipulation of Dismissal regarding her claim, Count I, (see ECF No. 36).

On June 25, 2018, the Court permitted Defendants to file their Early Motion for Summary Judgment. (ECF No. 40; see ECF Nos. 44, 45). On July 13, 2018, Mr. Farrell filed an Opposition. (ECF No. 46). On July 27, 2018, Defendants filed their Reply. (ECF No. 47).

## II.  DISCUSSION

### A.  Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A).

---

Amendment. The Court will also permit Mr. Farrell's correction of the Complaint in his Opposition, wherein he notes Article 24 is part of the Maryland Declaration of Rights, not the Maryland Constitution.

Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden

of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.     Analysis**

Defendants argue that they are entitled to qualified immunity from Mr. Farrell's retaliation claim under the First Amendment to the U.S. Constitution and his due process claim under the U.S. Constitution and Article 24 of the Maryland Declaration of Rights. Although Defendants couch their argument in terms of qualified immunity, their principal contention is that Mr. Farrell fails to create a genuine dispute of material fact regarding Defendants' alleged violations of his constitutional rights.[4] Accordingly, the Court will analyze the Motion's arguments without viewing the facts through the lens of qualified immunity.

The Court addresses each count in turn.

---

[4] Defendants argue that the individual acts of retaliatory conduct Mr. Farrell alleges—the July 2014 performance evaluation, the "due process" meeting, and the elimination of the Coordinator of Safety and Security position—did not violate Mr. Farrell's "clearly established" constitutional rights. The weight of this argument, however, does not rest on the premise that these rights were not "clearly established," which is the second prong of the qualified immunity analysis. See Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Rather, Defendants primarily argue that their conduct did not violate Mr. Farrell's constitutional rights as a matter of law, which corresponds to the first prong of the qualified immunity analysis. See id. (requiring the court to determine whether the facts a plaintiff has alleged or shown "make out a violation of a constitutional right").

1.  **First Amendment Retaliation**

The First Amendment protects not only the affirmative right to speak, but also the "right to be free from retaliation by a public official for the exercise of that right." Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 560 (4th Cir. 2011) (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000)). Government workers do "not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of [their] employment." Crouse v. Town of Moncks Corner, 848 F.3d 576, 582 (4th Cir. 2017) (quoting City of San Diego v. Roe, 543 U.S. 77, 80 (2004) (per curiam)). But "a governmental employer may impose certain restraints on the speech of its employees . . . that would be unconstitutional if applied to the general public." Id. (citing Roe, 543 U.S. at 80). That is because "[a] public agency has an interest 'in promoting the efficiency of the public services it performs through its employees,' and allowing all employment decisions to be subject to 'intrusive oversight by the judiciary in the name of the First Amendment' would compromise an agency's operations." Id. at 582–83 (first quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968); and then quoting Connick v. Myers, 461 U.S. 138, 146 (1983)).

In a case such as this, where a government employee claims that he was disciplined because of his speech, the United States Court of Appeals for the Fourth Circuit has prescribed a three-prong test to determine if the employee's rights under the First Amendment were violated. Id. at 583 (citing McVey v. Stacy, 157 F.3d 271, 277 (4th Cir. 1998)). Under the McVey test, courts consider: (1) whether the employee "was

speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest"; (2) whether the employee's interest in speaking freely outweighs "the government's interest in providing effective and efficient services to the public"; and (3) whether the employee's speech caused the disciplinary action. McVey, 157 F.3d at 277–78. The first two prongs are questions of law, while the third is a factual inquiry. Crouse, 848 F.3d at 583 (citing Brooks v. Arthur, 685 F.3d 367, 371 (4th Cir. 2012)).

Under the first prong, a government employee speaks upon a matter of public concern when the speech "addresses 'an issue of social, political, or other interest to a community.'" Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 316 (4th Cir. 2006) (quoting Urofsky v. Gilmore, 216 F.3d 401, 406–07 (4th Cir. 2000) (en banc)). This turns on "the content, form, and context" of the speech "as revealed by the whole record." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 347 (D.Md. 2011) (quoting Connick, 461 U.S. at 147–48 & n.7 (1983)).

Here, Mr. Farrell cannot satisfy the first prong because he has not offered any specific instances where he spoke as a private citizen on a matter of public concern. (Farrell Dep. 53:16–17; 55:14–18). When asked for examples of such speech during his deposition, Mr. Farrell said that he "supported" Ms. Farrell and her statements about the Policy but could not recall any particular statement that he made on those topics. (Farrell Dep. 50:7–55:23). Mr. Farrell said, "I'm sure I talked about the communication policy," (Farrell Dep. 53:3–4), but he could not name a specific instance. He merely stated that he made such statements "[a]ll during the campaign." (Farrell Dep. 53:15). In his post-

deposition Declaration, Mr. Farrell repeats the conclusory statement from the Complaint that he "supported" his late wife's campaign and "exercised his right of free speech in respect to her efforts to gain a position on the school board." (Compl. ¶ 21; Farrell Decl. ¶ 13). Such statements might be enough to survive a motion to dismiss, see Ridpath, 447 F.3d at 317, but to survive a motion for summary judgment, a plaintiff must "adduce evidence sufficient to show material facts in dispute as to each of the three prongs of the McVey test." Adams, 640 F.3d at 561. The Court, therefore, concludes that Mr. Farrell has not provided the necessary evidence of speech, in his capacity as a private citizen on a matter of public concern, to substantiate the related allegations in the Complaint.

Accordingly, there is no genuine dispute of material fact regarding this element, and Mr. Farrell's First Amendment retaliation claim necessarily fails. The Court, therefore, concludes that Defendants are entitled to summary judgment in their favor on Count II. As a result, the Court will grant the Motion as to Count II.

### 2. Procedural Due Process

In its March 21, 2017 Memorandum Opinion, the Court, citing Cleveland Board of Education v. Loudermill, 470 U.S. 532, 539 n.5 (1985), concluded that whether Mr. Farrell had tenure, and therefore a property interest entitling him to due process protections, involved a factual determination. (Mar. 21, 2017 Mem. Op. at 19, ECF No. 13). As the Court must accept as true all well-pleaded facts in considering a motion to dismiss, and not entertain factual disputes, the Court denied Defendants' Motion to

Dismiss as to Count III. (Id. at 19–20; Mar. 21, 2017 Order at 1–2, ECF No. 14). The Court must now analyze the tenure question again, this time under the summary judgment standard. At this stage, the Court concludes that Defendants have demonstrated that there is no genuine dispute of material fact on the question of Mr. Farrell's tenure and, consequently, that Defendants are entitled to judgment as a matter of law with regard to Count III.

In considering any due process claim, the starting point is identifying a constitutionally protected property interest. Gardner v. City of Balt. Mayor, 969 F.2d 63, 68 (4th Cir. 1992); see Frall Developers, Inc. v. Bd. of Cty. Comm'rs, No. CCB-07-2731, 2008 WL 4533910, at *8 (D.Md. Sept. 30, 2008). State or local government employees have a constitutionally protected property interest in continued public employment only if they can show a "legitimate claim of entitlement" to their job under state or local law. Luy v. Balt. Police Dep't, 326 F.Supp.2d 682, 689 (D.Md. 2004) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577–78 (1972)), aff'd, 120 F.App'x 465 (4th Cir. 2005) (per curiam). The employment rights of a tenured teacher constitute a sufficient property interest to warrant due process protection. See Kalme v. W.Va. Bd. of Regents, 539 F.2d 1346, 1348 (4th Cir. 1976) (first citing Roth, 408 U.S. 564 (1972); and then citing Slochower v. Bd. of Educ., 350 U.S. 551 (1956)). The Fourteenth Amendment does not, however, "protect citizens against the voluntary, unilateral relinquishment of known rights." Id.

In interpreting the state's education laws, the Court of Appeals of Maryland has repeatedly deferred to the authority of the Maryland State Board of Education ("MSBE"). See Balt. City Bd. of Sch. Comm'rs v. City Neighbors Charter Sch., 929 A.2d 113, 124–25 (Md. 2007). The General Assembly has granted MSBE, through its statutory authority "a visitatorial power of such comprehensive character as to invest the [MSBE] with the last word on any matter concerning educational policy or the administration of the system of public education." Id. at 124 (internal quotation marks omitted) (quoting Bd. of Educ. v. Waeldner, 470 A.2d 332, 335 (1984)). In City Neighbors, the Court of Appeals further noted that, while purely legal questions are for courts to decide, "the paramount role of the [MSBE] in interpreting the public education law sets it apart from most administrative agencies," id. at 124–25 (quoting Bd. of Educ. v. Hubbard, 506 A.2d 625, 633 (Md. 1986)), meaning that "[MSBE] rulings must be given heightened . . . deference," id. at 125.

With this deference in mind, Defendants cite Monica Jones v. Baltimore City Board of School Commissioners, Opinion No. 05-15 (MSBE 2015), http://archives.marylandpublicschools.org/MSDE/stateboard/legalopinions/2010/docs/Jones.Opin.No.15-05.pdf, wherein the MSBE held that the failure to renew a professional certificate results in the forfeiture of tenure. In Jones, the MSBE explained that tenure is "a creature of State law" and is contained in the Regular Contract prescribed by the Code of Maryland Regulations ("COMAR") 13A.07.02.01. Jones, at *6 (citing Md. Code. Ann., Educ. § 6-202). To obtain tenure, certified teachers must complete a probationary

11

period, now three years,[5] during which the school system decides annually whether to renew the teacher's contract. Id. During the probationary period, the teacher does not have tenure, but upon completion of the probationary period, "a certified teacher is deemed to have tenure." Id. Jones was a tenured teacher employed under the Regular Contract who failed to renew her certification before it expired. Id.

> After [Jones] allowed her certification to lapse, however, her own actions, or lack thereof, altered the employment relationship by triggering the automatic termination clause. At that point in time, [Jones] could have no reasonable expectation of continued employment with the school system or a legitimate claim of entitlement to her position because the regular contract securing that expectation no longer existed. . . . As such, her property right in her employment ceased to exist.

Id. at *6–7. In this way, a previously certified teacher with tenure loses that tenure protection when he allows his certification to lapse.

On June 18, 2003, Mr. Farrell signed a standard state contract entitled "Contract— Provisional Certificate" under which he would start work for ACPS as a law enforcement instructor at the Center for Career & Technical Training beginning August 20, 2003. (Blank Decl. Ex. E ("Provisional Contract"), ECF No. 40-5 at 4–5). The Provisional Contract, prescribed by COMAR 13A.07.02.01.C, states that, "[a]nything to the contrary notwithstanding, this contract shall terminate if the employee ceases to hold a teacher's Provisional Certificate." (Id. at 4). The Provisional Contract also provides that "if said

---

[5] The 2010 Education Reform Act extended the probationary period from two to three years, and COMAR 13A.07.02.01 was amended to reflect that change. See Education Reform Act of 2010, H.B. 1263, 2010 Reg. Sess. (Md. 2010); 37 Md. Reg. 1306 (Sept. 10, 2010). For that reason, Mr. Farrell received tenure in 2005 after two years of teaching.

12

employee is provided a Professional Certificate, his or her employment shall be governed by the Regular Contract then in force," as prescribed by COMAR 13A.07.02.01.B. (Id.).

On July 7, 2004, Mr. Farrell was issued a Professional Certificate valid from July 1, 2004 to July 1, 2009, (Blank Decl. Ex. G ("Professional Certificate"), ECF No. 40-5 at 10–11), which brought Mr. Farrell's employment under the Regular Contract, (see Blank Decl. Ex. F ("Regular Contract"), ECF No. 40-5 at 7–8). The Regular Contract provides that "[t]his contract shall automatically terminate if the employee ceases to hold a professional certificate." (Id. at 8). Mr. Farrell does not recall renewing his Professional Certificate, (Farrell Dep. at 33:23–35:13), and does not dispute that it therefore expired on July 1, 2009. Defendants assert Mr. Farrell received tenure in 2005 as a certificated employee, (Blank Decl. ¶ 5), which Mr. Farrell does not dispute. (Farrell Dep. at 18:6–17, 23:4–9). He only disputes that he forfeited his tenure in 2009 or at any point thereafter. (Compl. ¶ 13; Farrell Decl. ¶ 25).

In his Opposition, Mr. Farrell does not address Jones or the deference courts traditionally give to MSBE's rulings. Instead, he relies on the deposition testimony of his former supervisors, James Smith and Dr. William AuMiller. But Smith and AuMiller's deposition testimony do not evidence a genuine dispute of material fact regarding Mr. Farrell's tenure because their testimony does not present competing facts. Instead, they explain, as if expert witnesses, how they understand tenure to work, contradicting the MSBE's opinion in Jones.

13

Smith, the ACPS Director of Personnel until his retirement on April 1, 2009, (Smith Dep. 12:3–11, 20:13–15, May 8, 2018, ECF No. 46-10), testified that Mr. Farrell had tenure when he was terminated in 2015 because the legal right to extended employment "goes without saying, for teachers and support staff and administrators as well, as far as I'm concerned," (Smith Dep. 25:12–19). He then testified that "tenure doesn't have anything to do with certification," but Smith could not cite any authority to support that assertion. (Smith Dep. 26:7–17). Thus, Smith's testimony does not create a genuine dispute of material fact regarding whether Mr. Farrell was tenured at the time of his termination.

Dr. AuMiller's testimony fails to create a genuine dispute of material fact for the same reason. Calling tenure "an often misunderstood concept in education," Dr. AuMiller, the former ACPS Superintendent and now a Professor at Frostburg State University offered his "interpretation." (AuMiller Dep. 9:19–10:12, 19:8–9, Apr. 3, 2018, ECF No. 46-9). AuMiller testified that, "[y]ou never lose your tenure as a teacher in Maryland." (AuMiller Dep. 25:8–9). AuMiller explained that Mr. Farrell "would have still retained his tenure as a teacher" in 2015 because "[t]hat's been past practice for a long while in education, probably in every school system that I'm familiar with at least." (AuMiller Dep. 28:3–29:2). AuMiller concluded his testimony by saying that Mr. Farrell was no longer subject to the Regular Contract, or any contract, when Mr. Farrell's Professional Certificate lapsed in 2009. (AuMiller Dep. 46:1–11). As with Smith's testimony, AuMiller's testimony does not offer new facts about Mr. Farrell's

employment that create a genuine dispute of material fact regarding Mr. Farrell's tenure status. AuMiller based his opinion of whether Mr. Farrell still had tenure in 2015 on "past practice" and his understanding of Maryland's education statutes and regulations. (AuMiller Dep. 28:3–29:2 31:13–34:6, 36:6–20). Though AuMiller's interpretation of how tenure works conflicts with the MSBE's interpretation of tenure in Jones, it does not create a genuine dispute of material fact in this case.

The Court, therefore, concludes that when Mr. Farrell allowed his Professional Certificate to lapse in 2009, he forfeited his tenure under the Regular Contract. Jones, at *6. As a result, Mr. Farrell no longer had a property interest in continued employment at the time of his termination in 2015. Roth, 408 U.S. at 577–78. Without a property interest, he was not entitled to due process before being terminated. Id. Thus, there exists no genuine dispute of material fact regarding whether Defendants violated Mr. Farrell's Fourteenth Amendment rights.[6] Accordingly, the Court will grant Defendants' Motion as to Count III.

---

[6] For the same reasons, the Court also concludes that Defendants are entitled to summary judgment as to Mr. Farrell's claim under Article 24 of the Maryland Declaration of Rights. Generally, Article 24 due process claims are read in pari materia with Fourteenth Amendment due process claims, except in limited circumstances, usually in criminal cases, when Article 24 may be interpreted more broadly. Ross v. Cecil Cty. Dep't of Soc. Servs., 878 F.Supp.2d 606, 622 (D.Md. 2012) (citing Koshko v. Haining, 921 A.2d 171, 194 n.22 (Md. 2007)); see also Borchardt v. State, 786 A.2d 631, 681 (Md. 2001) (Raker, J., dissenting). The circumstances do not warrant a broader application of Article 24 here. See Koshko, 921 A.2d at 194 n.22; Dua v. Comcast Cable of Maryland, Inc., 805 A.2d 1061, 1071 (Md. 2002) (cataloguing cases).

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Early Motion for Summary Judgment (ECF No. 40). A separate Order follows.

Entered this 31st day of May, 2019.

/s/
_____
George L. Russell, III
United States District Judge